**Manuel D. SERRANO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–94–00852–CR.**

Court of Appeals of Texas,
Houston, (14th Dist.).

Nov. 14, 1996.

Rehearing Overruled Jan. 30, 1997.

Timothy A. Hootman, La Porte, for appellant.

Melissa Fain, Huntsville, for appellee.

Before MURPHY, C.J., and HUDSON and ANDERSON, JJ.

## OPINION

ANDERSON, Justice.

A jury found appellant, Manuel Serrano, guilty of driving while intoxicated. Act of May 28, 1923, 38th Leg., 2nd C.S., 1923 Tex. Gen. Laws 56, *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.15, 1993 Tex. Gen. Laws 3704 (current version at TEX. PENAL CODE ANN. § 49.04 (Vernon 1994 & Supp.1996)). The trial court assessed punishment at 180 days in jail, a $700.00 fine, eighty hours of community service, suspension of appellant's driver's license for one year, and court costs of $187.50. The sentence was probated for two years. In four points of error, Serrano (1) contends the trial court erred in admitting a blood sample as evidence of legal intoxication; and (2) challenges the legal and factual sufficiency of the evidence to support his conviction. We affirm.

On October 19, 1992, appellant's car ran into a median on Interstate 45, rolled over, and knocked down a stop sign. When a Department of Public Safety (DPS) officer arrived, appellant identified himself as the driver of the vehicle and requested medical treatment. At the hospital, medical personnel took a blood sample that revealed alcohol in his system.

In his first point of error appellant contends the trial court erred in admitting State's Exhibit No. 1, the medical records showing the results of the blood sample test taken at the hospital where appellant received medical treatment. Appellant contends the exhibit was inadmissible because the State failed to show that (1) he consented to the blood test; (2) the proper chain of custody was maintained over the sample; (3) the proper person took the blood sample; and (4) the method of preparation of the report was reliable.

Appellant's first contention is without merit because the statute upon which he relies is inapplicable. Article 6701*l*–5(2)(a) of the Texas Civil Statues provides that a blood sample may be taken at the request of the State when a person is under arrest for an alcohol-related driving offense, but only if the arrestee does not withdraw consent to the test. Act of May 21, 1969, 61st Leg., R.S., ch. 434, 1969 Tex. Gen. Laws 1468, *repealed by* Act of May 12, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1870, 1871 (current version at TEX. TRANSP. CODE ANN. § 724.013 (Vernon 1996)). This law applies only to persons who have been arrested. *Bennett v. State,* 522 S.W.2d 507, 509 (Tex. Crim.App.1975). An arrest occurs when a person's liberty of movement is restricted or restrained. *Amores v. State,* 816 S.W.2d 407, 411 (Tex.Crim.App.1991); TEX.CODE. OF CRIM. PROC. ANN. art. 15.22 (Vernon 1977) (providing that a person is arrested when he has been actually placed under restraint).

■ This case falls outside the parameters of Article 6701*l*–5(2)(a). In this case, the record reflects that appellant was unable to sign a consent for medical treatment at the time of his admittance to the hospital. Consequently, to provide medical assistance, hospital staff collected a sample of appellant's blood, apparently without his consent. There is no evidence that the investigating officer requested the hospital to collect the blood sample or to test it for alcohol content. Furthermore, there is no evidence that appellant was under arrest either at the accident scene or at the hospital. In fact, the record reflects that the State took very little action until a complaint against appellant was filed in May 1993, approximately seven months after the accident. Therefore, because appellant was not under arrest at the scene of the accident or at the hospital, his consent to a blood test was not required. *See Burkhalter v. State,* 642 S.W.2d 231, 233 (Tex.App.—Houston [14th Dist.] 1982, no pet.)(holding consent not required when defendant not under arrest).

■ Second, appellant contends the State failed to show the requisite chain of custody necessary to establish the blood spe-

cimen tested actually was taken from him. To admit the results of a blood test into evidence, the State must show that the blood sample tested was the one actually drawn from the suspect as well as the proper chain of custody of that sample. *Brown v. State,* 156 Tex.Crim. R. 144, 240 S.W.2d 310, 311 (1951); *Moone v. State,* 728 S.W.2d 928, 930 (Tex.App.—Houston [14th Dist.] 1987, no pet.); *Lynch v. State,* 687 S.W.2d 76, 77–78 (Tex.App.—Amarillo 1985, pet. ref'd). However, appellant waived any alleged error by failing to object at trial on the same basis as that asserted on appeal.[1] *Cavazos v. State,* 904 S.W.2d 744, 748 (Tex.App.—Corpus Christi 1995, pet ref'd); TEX.R.APP. P. 52(a).

■ Third, appellant contends the State failed to establish that a proper person took the blood sample. When a person submits to a blood test at the request of a law enforcement officer, only a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse under the supervision of a licensed physician may withdraw blood for the purpose of determining the alcoholic content therein. Act of May 21, 1969, 61st Leg., R.S., ch. 434, 1969 Tex. Gen. Laws 1468, *repealed by* Act of May 12, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1870, 1871 (current version at TEX. TRANS. CODE ANN. § 724.017 (Vernon 1996)). The record reflects that an individual identified only by the initials BB collected appellant's blood. On the other hand, appellant did not submit to the blood test at the request of a law enforcement officer.

The trial court admitted the medical records, which included appellant's blood test results, under Rule 803(6) of the Texas Rules of Criminal Evidence, the business record exception to the hearsay rule. Appellant objected that the State failed to show the trustworthiness of the test result. On appeal, however, appellant contends the admission of the blood test under the business record exception, without evidence of who conducted the blood test, deprived him of the right to confront witnesses under the Sixth Amendment to the United States Constitution and Section 10 of Article 1 of the Texas Constitution.

■ The business record exception to the hearsay rule is applicable to criminal cases as long as the proponent demonstrates the reliability of the document so as to guarantee the same protection provided by the constitutional rights of confrontation and cross-examination. *Long v. State,* 742 S.W.2d 302, 314 (Tex.Cr.App.1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988), *overruled on other grounds by Briggs v. State,* 789 S.W.2d 918 (Tex.Crim.App.1990). However, to preserve error for appellate review, appellant must make a timely and specific objection at trial. TEX.R.APP. PROC. 52(a). Even constitutional errors may be waived by failing to object at trial. *Briggs,* 789 S.W.2d at 924. In this case, appellant failed to object on the grounds that the admission of the blood test deprived him of his constitutional right of confrontation (see n. 1 above). Consequently, once the State established the proper predicate through the custodian of records as required by Rule 803(6), the trial court properly admitted the record.

■ Even if the trial court erred in admitting the medical record, the error is harmless. An appellate court must reverse a case upon a finding of error unless the court is satisfied beyond a reasonable doubt that the error had no impact on the guilty verdict or the punishment. TEX.R.APP. P. 81(b)(2). In conducting a harm analysis, an appellate court must consider the following factors: (1) the source of the error; (2) the nature of the error; (2) whether or to what extent it was emphasized by the State; (4) its probable collateral implication; (5) how much weight the jury probably placed on the error; and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989).

The record, in this case, reflects that the State's failure to call the medical personnel

---

1. At trial, when the State introduced the hospital records of appellant's blood test, appellant objected based on Article 6701*l*–5, the hearsay rule, and that such information could only be introduced by an expert, not through the hospital's custodian of records, but never asserted the chain of custody complaint.

who collected and tested the blood sample confounded the jury's assessment of appellant's alleged intoxication because the custodian of the record was unable to interpret the meaning of "ALCOHOL (ETOH) 106 mg/dL" as noted in the medical record. During deliberations, the jury sent out a note asking whether 106 mg/dl in the medical report meant that there was ".106"% by weight of alcohol in appellant's blood, thus satisfying the standard of blood alcohol concentration for legal intoxication. *See* Art. 6701*l*–5(3)(a), now repealed. The trial court responded that the question was factual and a determination for the jury to make.

The facts of this case are analogous to *Turner v. State,* 734 S.W.2d 186 (Tex.App.— Dallas 1987, pet. ref'd). During trial, the result of Turner's blood test was admitted, and a witness testified as to the blood alcohol level which constitutes legal intoxication. Later, during deliberation, the jury sent out a note which read: "Judge–Is .10 a guideline or a law to prove intoxication," following confusing testimony as to whether .10 or .11 was the intoxication law in Texas. *Id.* at 188–189. The trial court allowed the testimony of a witness to be read to the jury to answer the question of law as to whether .10 was the legal standard for intoxication. On appeal, the *Turner* court held the results of the blood test were improperly admitted because the test violated the statutory requirement that such tests be conducted in a physician's office or a licensed hospital, and, concomitantly, the testimony regarding these results was also inadmissible. After conducting a harm analysis, the *Turner* court held the improperly admitted blood test evidence was harmful because after the testimony was read to the jury, a deadlock was broken and a verdict of guilty was returned within ten minutes.

Here, however, because there was no testimony interpreting the results of appellant's blood test, it is more likely, due to the confusion over the meaning of "ALCOHOL (ETOH) 106 mg/dL," that jurors ignored the blood test and relied on the investigating officer's opinion that appellant was intoxicated at the scene of the accident. The officer testified appellant "had a very, very strong odor of an alcoholic beverage on his breath," his eyes were "lazy, blood-shot and glassy," and his speech was "slurred." Without objection, the officer testified appellant told him he had been drinking, and his "last drink" was "before the accident had happened." Jurors were charged that "intoxicated" means:

> Not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body; or
>
>> Having an alcohol concentration of 0.10 or more.

The officer's testimony supports the conclusion that alcohol affected the normal use of appellant's mental or physical faculties. *See Rangel v. State,* 502 S.W.2d 152 (Tex. Crim.App.1973) (holding that officers' testimony that appellant had glassy and blood-shot eyes, strong odor of alcohol on his breath, and slurred speech was sufficient to sustain conviction for driving while intoxicated irrespective of results of breath test). Moreover, because the jurors likely gave the officer's testimony more weight than the confusing medical report, and because the likelihood of the State repeating the error with impunity is slim, any error in admitting the medical records was harmless. Point of error number one is overruled.

■ In his second, and third points of error, appellant contends the trial court erred in denying his motions for a directed verdict and a judgment notwithstanding the verdict, respectively. In his fourth point of error, appellant challenges the legal and factual sufficiency of the evidence to support his conviction. The standard of review applicable to a motion for directed verdict and a judgment notwithstanding the verdict is the same standard as that used in reviewing a challenge to the legal sufficiency of the evidence. *Havard v. State,* 800 S.W.2d 195, 199 (Tex.Crim.App.1989); *see Bel–Ton Electric. Serv., Inc. v. Pickle,* 877 S.W.2d 789, 794 (Tex.App.Dallas 1994), *rev'd on other grounds,* 915 S.W.2d 480 (Tex.1996). Therefore, we will address these issues together.

■ In reviewing the sufficiency of the evidence to support appellant's conviction, this court views all of the evidence in the

light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of driving while intoxicated beyond a reasonable doubt. *Saxton v. State,* 804 S.W.2d 910, 914 (Tex. Crim.App.1991) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)). As a reviewing court, we may not weigh the evidence, but act only to ensure the jury reached a rational decision. *Muniz v. State,* 851 S.W.2d 238, 246 (Tex.Crim.App.), *cert. denied,* 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993).

The elements of the offense of driving while intoxicated are (1) driving a motor vehicle (2) on a public highway (3) while intoxicated. *Threet v. State,* 157 Tex.Crim. 497, 250 S.W.2d 200 (Tex.Crim.App.1952); *Turner v. State,* 877 S.W.2d 513, 515 (Tex. App.—Fort Worth 1994, no pet.). Appellant does not assert that the evidence is insufficient to show that he was intoxicated, but contends the evidence is insufficient to show that he was the driver of the wrecked automobile because (1) his statements made at the scene were inadmissible hearsay; and (2) the investigating officer was unable to identify him at trial except by his driver's license.

 When Department of Public Safety Officer Jesse Hernandez arrived at the scene of the accident, none of the four passengers were in the car. However, appellant stated he was the driver, and handed the officer a driver's license identifying himself as Manuel DeJesus Serrano. At trial, however, appellant contended this admission was hearsay as a statement against interest and admissible only if the State presented corroborating evidence identifying him as the driver. Whether the statement was admissible is of no moment. When evaluating the sufficiency of the evidence, the appellate court must look at all the evidence whether properly or improperly admitted. *Bobo v. State,* 843 S.W.2d 572, 575 (Tex.Crim.App. 1992).

Nevertheless, we find the statement to be admissible as an admission by a party-opponent. A statement is not hearsay and is admissible without corroboration if the statement is offered against a party and is his own statement. Tex.R.Crim. Evid.

801(e)(2)(A); *Bell v. State,* 877 S.W.2d 21, 24 (Tex.App.—Dallas 1994, pet. ref'd) (noting that admissions differ from hearsay exceptions because when dealing with admissions, the concern is no longer with the reliability and trustworthiness of the statement); *see also* 2 Goode, Wellborn & Sharlot, Guide to the Texas Rules of Evidence: Civil and Criminal § 801.7 (1993) (stating that the corroboration requirement of Rule 803(24) does not apply to an admission under Rule 801(e)(2)(A)). Rule 801(e)(2)(A) exempts admissions by a party-opponent from the hearsay definition because a party should not be allowed to exclude his own statement on the ground that what he said was untrustworthy. *Perkins v. State,* 902 S.W.2d 88, 98 (Tex. App.—El Paso 1995, no pet.). Because the State offered appellant's own statement that he was the driver of the car involved in the accident, the statement was admissible as an admission by a party-opponent.

 Appellant also complains the officer did not positively identify him in court. The officer stated the following:

STATE: Do you see the man who said he was driving in the courtroom today?

ANSWER: It has been awhile. If I could see his driver's license. That was the way I identified him that night. Can I identify him that way again?

DEFENSE COUNSEL: We would object, Your Honor. Assuming he even has his driver's license with him.

THE COURT: You identified him by his driver's license, officer?

ANSWER: Yes Ma'am. I took his name as being Manuel DeJesus Serrano with the driver's license and that is the reason that I put it on my report. The driver identified himself as Manuel DeJesus Serrano with a Texas driver's license. That's what he handed me. And I put the number down there as to what it was and so forth.

DEFENSE COUNSEL: Your Honor, if the witness cannot even identify who the man he arrested was, we would move that the charges be dismissed. As far as asking him to produce his driver's license, that's completely—I mean, we object wholeheartedly on multiple basis [sic].

THE COURT: Well, your objection as far as the driver's license is sustained. You're overruled as far as a mistrial is concerned at this time. Okay, Ms. Fain, go ahead.

STATE: Officer Hernandez, where did you get the driver's license from?

ANSWER: From the man that said he was driving.

Later, the officer explained he could not positively identify appellant in court because at the scene of the accident appellant had open facial injuries and his hair was disarranged. Although an uncertain in-court identification alone is not sufficient, the fact the officer previously identified appellant is sufficient additional evidence to support the conviction. *Bickems v. State,* 708 S.W.2d 541, 543 (Tex.App.—Dallas 1986, no pet.). Combined with appellant's admission that he was the driver of the wrecked vehicle, we find a rational trier of fact could conclude that appellant was the driver of the wrecked vehicle.

 Having determined the evidence is legally sufficient to support appellant's conviction, we now consider the factual sufficiency of the evidence. *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996). In conducting a factual sufficiency review, we view all the evidence without the prism of the light most favorable to the prosecution, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 129. This review, however, must be appropriately deferential in order for the appellate court to avoid substituting its judgment for that of the jury. *Id.* at 133.

Here, Officer Hernandez testified that appellant volunteered that he was the driver of the wrecked vehicle, and that he identified the driver as appellant by appellant's driver's license. Hernandez further testified that he was unable to identify appellant at trial without appellant's driver's license because appellant did not look the same as he did at the scene of the accident. At appellant's request, Hernandez called an ambulance and directed a wrecker to tow appellant's car to appellant's house. Hernandez later questioned appellant at the hospital regarding the accident. Hospital records also state that appellant was the driver of the car. In reviewing this evidence without the prism of the light most favorable to the prosecution, we cannot say that the evidence regarding appellant's identity is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust so as to require a reversal. Consequently, we find the evidence to be legally and factually sufficient to support appellant's conviction for driving while intoxicated. Appellant's second, third, and fourth points of error are overruled.

The judgment of the court below is affirmed.